**J. D. FORTNER, Appellant,**

v.

**FANNIN BANK IN WINDOM, Appellee.**

No. 13384.

Court of Appeals of Texas, Austin.

May 26, 1982.

Rehearing Denied June 16, 1982.

Joe K. Longley, Longley & Maxwell, Austin, for appellant.

David H. Donaldson, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellee.

SHANNON, Justice.

This is an appeal from a summary judgment rendered by the district court of Travis County that appellant J. D. Fortner take nothing from appellee Fannin Bank. Fortner claimed the bank violated § 17.46(a) of the Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. (Supp.1982), subsequently termed "DTPA."

Fortner pleaded that in April, 1977 the bank falsely represented that it would register the title papers to a Jaguar automobile Fortner purchased with the funds from a loan made him by the bank. He pleaded further the bank's failure to file the title papers enabled a mechanic to foreclose a mechanic's lien on the Jaguar without notice to Fortner, thereby "adversely affecting" him under the DTPA.

The bank's motion for summary judgment was predicated on three grounds: (1) Fortner was not a consumer of services under the DTPA; (2) the bank did not violate any provision of the DTPA; and (3) Fortner was not "adversely affected" under the DTPA by any action of the bank. As the summary judgment order does not recite the ground or grounds upon which it is predicated, Fortner attacks, as he must, each ground upon which the order could have been based.

In an appeal of a summary judgment granted to a defendant, this Court must determine "whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause of action." *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970) (emphasis in original). Because we have determined that the summary judgment proof fails to establish *as a matter of law* that no issue of material fact exists as to Fortner's cause of action, we reverse the judgment.

I. FORTNER AS A CONSUMER UNDER THE DTPA

One ground for summary judgment was that Fortner was not a "consumer" of goods or services under the DTPA. The Act defines "consumer" as "an individual ... who seeks or acquires by purchase or lease, any goods or services." DTPA § 17.-45(4) (Supp.1982). While the Supreme Court has held in *Riverside National Bank v. Lewis*, 603 S.W.2d 169, 174–5 (Tex.1980), that borrowing money is not an acquisition of services under the DTPA,[1] the Court in that case expressly refused to determine whether activities collateral to a loan transaction are subject to the Act. *Id.* at 175 n. 5. In this appeal, an activity collateral to a loan, the bank's alleged agreement to process the title papers to Fortner's car,[2] is the

1. *But see Knight v. International Harvester Credit Corporation*, 627 S.W.2d 382, 383, 389 (Tex.1982), holding that provision of credit in an installment sales agreement given simulta-

neous with the purchase of a vehicle is a service under the DTPA.

2. There is a factual dispute as to whether the

subject of plaintiff's claim. This activity comes within the DTPA's general definition of services as "work, labor, or service purchased or leased for use . . . ." DTPA § 17.45(2). The Supreme Court has further discussed "services" in the context of the DTPA:

> "Services" was defined by this Court in *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex.1962). We defined services as: "action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object." This definition described "services" in terms of "action," "conduct," "performance" and "deeds." All of these synonyms demonstrate that services includes *an activity* on behalf of one party by another.

*Id.* at 174 (emphasis in original). The bank's alleged agreement with Fortner to file the title papers for the car assisted or benefited Fortner, or was an activity conducted on his behalf. While Fortner has the statutory duty to file the car's title, under Tex.Rev.Civ.Stat.Ann. art. 6687–6 (Supp.1982), the bank's undertaking this responsibility relieved him of this burden. Furthermore, as is particularly relevant in this appeal and as will be discussed in greater detail later, title registration would have benefited Fortner because as record title holder of the vehicle, he would have been entitled to receive notice of an impending sale of the automobile by a workman asserting a mechanic's or materialman's lien. Admittedly, the bank would

benefit from processing the title papers to the car as this act properly perfects its lien. Nevertheless, we believe collateral services such as the agreement in this case to title the car are services within the meaning of the DTPA.

Assuming that a service is governed by the Act, it is plain that a service performed gratuitously is not a "purchased" service within the meaning of the Act. *Hall v. Bean*, 582 S.W.2d 263, 265 (Tex.Civ.App. 1979, no writ) (no consideration given for contest prize, thus no "purchase" under the DTPA); *Exxon v. Dunn*, 581 S.W.2d 500 (Tex.Civ.App.1979, no writ) (service station unsuccessfully attempted to repair, without compensation, car air conditioner, car owner not purchaser of services under the Act); *Russell v. Hartford Insurance Co.*, 548 S.W.2d 737, 741 (Tex.Civ.App.1977, writ ref'd n. r. e.) (free rent-car provided by insurance company not "purchased" within meaning of the DTPA, therefore no cause of action under the Act).

Fortner requested the bank to process the title papers to the car he bought with the proceeds of the loan from the bank. The bank contends the summary judgment proof shows conclusively that Fortner paid the bank no independent compensation for its agreement to process the title papers.[3] In response, Fortner's argument is that the interest charged for the loan also "purchased" the bank's titling services. The bank replies that since the statutory definition of interest is "the compensation allowed by law for the use or forebearance or detention of money," Tex.Rev.Civ.Stat.Ann.

bank agreed to process the title papers or hold them open in the event Fortner resold the car within a short time. In view of our decision reversing the summary judgment, this issue, like others in the case, will be resolved on remand.

3. In his deposition, Fortner testified as follows:
Q [Attorney] Right, and what you got from the bank was money to pay for the car?
A [Fortner] I got money, and of course, their services.
Q What kind of services are you suggesting, Mr. Fortner?
A I am suggesting just normal personal banking services.

Q Did you pay them anything more than interest on the loan for these alleged services?
A I don't know. You mean did they bill me for other services?
Q Yes.
A No.
Q As far as payments to the bank go, the only payments you can recollect at this time were interest payments, in addition to principal payments on the loan?
A That is the only kind of payments you can make to a bank.

art. 5069–1.01(a) (1971), Fortner is precluded from asserting the interest on his loan also paid for the car titling service.

▮ In his affidavit opposing appellee's motion for summary judgment, Fortner swore:

In the transaction wherein Mr. Purdy sold the Bank's services to me, he represented on behalf of the Bank that the Bank would finance the purchase of a Jaguar automobile for me, and would further render to me the service of seeing that the title papers to such automobile were filed with the proper governmental agency in order to show me as the new owner of the car. I relied on such representation relating to the transfer of title made on behalf of the Bank and decided to purchase the Bank's services by signing a promissory note bearing interest payable to the Bank, along with the necessary title transfer papers and returning all such documents to the Bank.

This Court must regard appellant's affidavit as true since he is the non-movant in the summary judgment proceeding. *Cowden v. Bell*, 157 Tex. 44, 300 S.W.2d 286 (1957); 4 R. McDonald, *Texas Civil Practice* § 17.26.-12, at 172 (rev. 1971). The affidavit is summary judgment proof that Fortner agreed to purchase the bank's services consisting of a loan of money *and* of filing the title papers to the car in exchange for his promise to repay principal and interest. In other words, Fortner claims he gave one consideration which supports promises by the Bank (1) to loan the money and (2) to title the car. A basic principle of contract law is that one consideration will support multiple promises by the other contracting party. *Reeves v. Lago Vista, Inc.*, 497 S.W.2d 950, 951 (Tex.Civ.App.1973, writ ref'd n. r. e.); *Lee v. Lee*, 275 S.W.2d 574 (Tex.Civ.App.1955, writ dism'd w. o. j.); *see also* Restatement (Second) of Contracts § 80(1) (1981).[4] Accordingly, the bank has failed to establish, conclusively, that Fortner is not a "purchaser" of the bank's titling service and hence not a "consumer" under the DTPA.

## II. ALLEGED VIOLATION OF THE DTPA

▮ Section 17.46(a) of the DTPA states "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful . . . ." Section 17.46(b) lists twenty-three specific acts declared *by law* to be "false, misleading, or deceptive."[5] An act not listed in § 17.46(b) can violate the DTPA, but a plaintiff alleging an act not listed must prove: (1) the act or practice occurred, and (2) the act or practice was, in fact, deceptive. *Spradling v. Williams*, 566 S.W.2d 561, 564 (Tex.1978).

Fortner pleaded the bank committed a false or misleading practice (in failing to file the title papers to his car) under § 17.46(a). He did not allege a specific violation listed in § 17.46(b). In its motion

---

4. Comment a to § 80 states:

a. *One consideration for a number of promises.* Since consideration is not required to be adequate in value . . . two or more promises may be binding even though made for the price of one. A single performance or return promise may thus furnish consideration for any number of promises. But if the performance or return promise would not be consideration for a single promise, it is not consideration for that promise as part of a set of promises, or for the other promises in the set.

Illustration 1 to § 80 is as follows:

1. A pays B or promises B to pay him $5.00, not then owed by A, in consideration of which B promises A to give him a book and also promises to surrender a letter. Both of B's promises are supported by consideration.

Restatement (Second) of Contracts § 80, Comment a, Illustration 1 (1981).

5. Under the current version of the DTPA, Fortner as a consumer could not plead a violation of § 17.46(a). Section 17.46(a) violations are only "subject to action by the consumer protection division [of the attorney's general's office]." DTPA § 17.46(a) (Supp.1982). Section 17.50(a) of the DTPA was amended in 1979 to provide "[a] consumer may maintain an action where any of the following constitute a producing cause of actual damages: (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter . . . ." DTPA § 17.50(a)(1) (Supp.1982).

for summary judgment, the bank was obliged to show either: (1) no act or practice occurred, or (2) that if an act occurred, it was not false, misleading, or deceptive. The bank failed to show conclusively in the summary judgment proof the absence of either element.

The parties do not dispute that an act occurred, as the bank admits the title papers were never filed. Furthermore, Fortner states in his affidavit he was deceived or misled by the bank's promise to file the papers. The Supreme Court has approved the liberal definition of "deceptive trade practice" as adopted by the federal courts. By this definition, an act is deceptive "if it has the capacity to deceive an ignorant, unthinking, or credulous person." *Spradling v. Williams*, 566 S.W.2d at 562. In view of this definition and accepting Fortner's statement as true, as we must, we conclude that the summary judgment proof does not show conclusively that the bank's failure to title the car was not false, misleading, or deceptive.

## III. ADVERSE AFFECT ON FORTNER UNDER THE DTPA

Fortner insists further that he was adversely affected by the bank's failure to file the car title papers. He argues that had the bank filed the title papers, his name would have appeared in the public records as owner of the car. Since a mechanic asserting a mechanic's lien under Tex.Rev. Civ.Stat.Ann. art. 5504 must give the vehicle's owner notice of the impending sale of the vehicle, Fortner claims he would have received that notice and could have acted to prevent the sale by paying the mechanic the outstanding charges. Plainly, the bank may not claim it conclusively established that Fortner was *not* adversely affected by the bank's failure to act as promised.

The bank argues the mechanic knew Fortner was the actual owner of the car even though he was not the record titleholder, and Fortner's remedy is against the mechanic for failing to notify Fortner. While this may be true, we are unable to hold, as a matter of law, the bank's failure

to title the car could not have been a *concurrent* producing cause of Fortner's injury.

The summary judgment is reversed and the cause is remanded for trial.