MEMORANDUM OPINION



No. 04-06-00778-CV



RESIDENCIAL SANTA RITA, INC.,


Appellant



v.



COLONIA SANTA RITA, INC.,


Appellee



From the 49th Judicial District Court, Webb County, Texas


Trial Court No. 2004-CVQ-000759-D1


Honorable Manuel R. Flores, Judge Presiding



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: September 12, 2007


AFFIRMED IN PART; REVERSED AND REMANDED IN PART

 Residencial Santa Rita, Inc. appeals the summary judgment granted in favor of Colonia Santa
Rita, Inc. in an action seeking to enforce a residential-only restrictive covenant. We reverse the trial
court's judgment as to Residencial's claims of fraud and statutory fraud and as to its affirmative
defense of estoppel. We affirm the trial court's judgment as to all other claims and affirmative
defenses asserted by Residencial.

Background


 Viewing the evidence in the light most favorable to Residencial, on November 4, 1996, Santa
Rita Plaza, L.C. filed a condominium declaration for Los Balcones De Santa Rita Condominiums,
consisting of twelve condominiums. The declaration restricted the use of the condominiums to
private residential use. At some point, ownership of the condominiums was transferred to Santa Rita
Development, Inc. ("SRD"). Camilo Prada, Cristina Prada, and Begonia Portugal were the three
directors of the condominium association.

 In 1999-2000, a construction company was permitted to operate out of one of the
condominium units for a period of twenty-four months. In 2000-2001, a company that sold water
purification/filtration products and equipment also was permitted to operate out of a condominium
unit for twelve months.

 On March 2, 2001, Camilo Prada died. Camilo's will made a division of the shares of SRD
such that Cristina and Begonia would each own 50% of SRD. On October 3, 2002, Cristina and
Begonia entered into a settlement agreement pursuant to which one-half of assets of SRD would be
conveyed to a corporation owned by Cristina, and the other one-half of the assets would be conveyed
to a corporation owned by Begonia. During the negotiations culminating in the execution of the
settlement agreement, Cristina asked Begonia's son, Eduardo, if she could continue to share the
office that had been used by SRD. Although Eduardo routinely made the decisions involving SRD
by himself, he told Cristina he would need to ask Begonia. After speaking with Begonia, Eduardo
told Cristina she could use one of the condominium units her corporation would receive as an office. 
Eduardo told Cristina she could begin the renovations immediately so the unit would be ready by the
time the separation was final. Cristina began renovating the condominium unit for this purpose in
January of 2003. 

 In April of 2003, deeds were executed in furtherance of the settlement agreement conveying
units 1-6 to Colonia, the corporation owned by Begonia, and conveying units 7-12 to Residencial,
the corporation owned by Cristina. At the same time that the deeds were executed, Begonia and
Cristina executed releases in favor of each other. In April of 2004, Colonia sent notice to
Residencial that the use of the unit by Cristina for Residencial's office violated the condominium's
restrictive covenants. The underlying lawsuit was a consolidation of separate lawsuits filed by each
party.

Standard of Review


 A traditional motion for summary judgment is properly granted only when the movant
establishes that there are no genuine issues of material fact and that the movant is entitled to
judgment as a matter of law on a ground expressly set forth in the motion. Joe v. Two Thirty Nine
Joint Venture, 145 S.W.3d 150, 156 (Tex. 2004). In reviewing the grant of a summary judgment,
we indulge every reasonable inference and resolve any doubts in favor of the non-movant. Id. 
Additionally, we assume all evidence favorable to the non-movant as true. Id. If a non-movant
opposes a summary judgment by relying on an affirmative defense, the non-movant must present
sufficient evidence to raise a genuine issue of material fact on each element of the defense to avoid
summary judgment. Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984).

 In reviewing a no-evidence summary judgment motion, we examine the record in the light
most favorable to the nonmovant; if the nonmovant presents more than a scintilla of evidence
supporting the disputed issue, summary judgment is improper. Forbes, Inc. v. Granada Biosciences,
Inc., 124 S.W.3d 167, 172 (Tex. 2003). Less than a scintilla of evidence exists when the evidence
is so weak as to do no more than create a mere surmise or suspicion of a fact. Id. More than a
scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their
conclusions. Id.

Discussion


 Residencial asserts that the trial court erred in granting Colonia's traditional motion for
summary judgment because: (1) neither the statute of frauds nor the Uniform Condominium Act
precludes Residencial from establishing that Colonia is estopped from enforcing the restrictive
covenant; and (2) the releases executed by the parties in connection with the settlement agreement
released Colonia's claim seeking to enforce the restrictive covenant. In addition, Residencial asserts
the trial court erred in granting Colonia's no-evidence motion for summary judgment because the
evidence raised a genuine issue of material fact with regard to Residencial's claims for fraud,
statutory fraud, agency/alter ego, and waiver.

 Although Colonia asserted a right to judgment pursuant to the statute of frauds which
requires a writing in order to enforce a sale of real property, the issue presented in this case is not
whether the real estate conveyance is enforceable because that conveyance is evidenced by a written
agreement. Instead, the issue is whether Colonia is estopped from enforcing the restrictive covenant
because of Eduardo's representation and the parties' subsequent actions. See American Garment
Properties, Inc. v. CB Richard Ellis-El Paso, L.L.C., 155 S.W.3d 431, 437 (Tex. App.--El Paso
2004, no pet.) (discussing whether party was estopped from relying on statute of frauds); see also
Moritz v. Bueche, 980 S.W.2d 849, 856 (Tex. App.--San Antonio 1998, no pet.) (noting statute of
frauds only bars claim seeking damages for breach of contract). Similarly, although section 82.067
of the Uniform Condominium Act requires the filing of an amendment to a condominium
declaration, the issue is whether Colonia can be estopped from enforcing the restrictive covenant
notwithstanding the absence of a filed amendment.

 To defeat summary judgment based on its affirmative defense of estoppel, Residencial was
required to present sufficient evidence to raise a fact issue with regard to each of the following
elements: (1) false representation or concealment of material facts; (2) made with actual or
constructive knowledge of the facts; (3) to a party without knowledge or the means to obtain
knowledge of the real facts; (4) made with the intention that such misrepresentation or concealment
should be acted upon; and (5) the party to whom it was made must have relied upon or acted upon
it to his prejudice. Pebble Beach Property Owners' Ass'n v. Sherer, 2 S.W.3d 283, 291 (Tex.
App.--San Antonio 1999, pet. denied). Here, Residencial introduced testimony that Eduardo
represented to Cristina that she could use one of the units that would be owned by Residencial as an
office. (1)
 Cristina had no knowledge that Colonia would subsequently act contrary to this
representation after Cristina had invested a substantial amount of money in renovating the unit and
had been operating the office out of the unit for approximately one year. Because this evidence is
sufficient to raise a genuine issue of material fact with regard to the affirmative defense of estoppel,
the trial court erred in granting the summary judgment in favor of Colonia on its claim that
Residencial violated the restrictive covenant.

 With regard to Residencial's affirmative defense of release, under Texas law, a release is a
contract, and, as such, a release should be interpreted like any other contract. Williams v. Glash, 789
S.W.2d 261, 264 (Tex. 1990); Coats v. Ruiz, 198 S.W.3d 863, 879 (Tex. App.--Dallas 2006, no
pet.). As part of the settlement agreement, Begonia and Cristina each agreed to execute releases for
all "disputed claims." Reading the definition of "disputed claims" in the context of the agreement,
it is clear that Colonia's claim for violating the restrictive covenant was not within the scope of the
"disputed claims" as that term was defined. The "disputed claims" related to controversies arising
from the interpretation of a premarital agreement between Camilo and Cristina and other claims
relating to the estate and its distribution. At the time the settlement agreement was signed, and the
term "disputed claims" was defined, Residencial had taken no action in violation of the restrictive
covenant. Therefore, reading the definition of "disputed claims" in the context of the parties'
agreement, Colonia's claim against Residencial for violating the restrictive covenant was not within
the scope of the release.

 Similarly, Colonia's argument that the merger clause in the settlement agreement precludes
Residencial's fraud claim fails. The settlement agreement contained the following merger clause:

 The Parties represent, covenant and warrant that they or their duly authorized
representatives have read this Agreement and fully understand it; that they have
executed this Agreement with the intent to be fully bound according to its terms; that
in signing this Agreement, they have relied solely on their own knowledge or their
duly authorized representatives' knowledge and judgment and/or advice of their own
attorneys and not in reliance upon any representation, warranty, advice, statement or
action of any kind of the other Parties, except to the extent such representations,
warranties, advice, statements, or actions are expressly set forth in this Agreement. 
The Parties expressly disclaim reliance on any fact or representation made by the
other if not expressly contained in this Agreement.

 Whether a merger clause is sufficient to disclaim the reliance element of a fraud claim
depends on the contract and the circumstances surrounding the formation of the contract. 
Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 179-80 (Tex. 1997). In this case, when the
settlement agreement was executed, the parties were attempting to settle disputes over Cristina's
contractual right of reimbursement and to partition and distribute the assets of Camilo's estate. 
Although the condominium units were an asset of the estate involved in the distribution, Colonia did
not present any evidence that the parties engaged in lengthy negotiations with regard to the terms of
the conveyance of the condominiums. Because the terms of the conveyance, particularly the
enforceability of the restrictive covenants, were not in dispute, the merger clause does not bar
Residencial's fraud claims. See Harris v. Archer, 134 S.W.3d 411, 431 (Tex. App.--Amarillo 2004,
pet. denied) (noting preclusion of claim based on merger clause based, in part, on fact that
discussions during negotiations involved the very subject matter which the plaintiffs claimed was
misrepresented to them); Burleson State Bank v. Plunkett, 27 S.W.3d 605, 616 (Tex. App.--Waco
2000, pet. denied) (allowing fraud claim despite merger clause under fact and circumstances
presented in the case); but see Schlumberger, 959 S.W.2d at 180-81 (merger clause barred fraud
claim based on alleged misrepresentation regarding the feasibility and value of sea-diamond project
where sole purpose of release was to end dispute about the value of the project); IKON Office
Solutions, Inc. v. Eifert, 125 S.W.3d 113, 126-28 (Tex. App.--Houston [1st Dist.] 2003, pet. denied)
(merger clause barred misrepresentation claims regarding job description where job description was
subject of lengthy and intense dispute and negotiation during contract formation).

 To raise a fact issue on its fraud claim, Residencial had to offer evidence that Colonia, or its
agent, made a material, false promise to Residencial and failed to fulfill that promise, to
Residencial's detriment. See DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 688 (Tex. 1990);
Gonzales v. American Title Co. of Houston, 104 S.W.3d 588, 594 (Tex. App.--Houston [1st Dist.]
2003, pet. denied). Similarly, fraud is statutorily defined as a false representation of a material fact,
made to a person for the purpose of inducing that person into a contract, on which representation the
person relies in entering into the contract. Tex. Bus. & Com. Code Ann. § 27.01(a)(1)(A)-(B)
(Vernon 2002). The same evidence that raises a fact issue with regard to Residencial's estoppel
defense also raises a fact issue sufficient to defeat Colonia's no-evidence summary judgment as to 
Residencial's fraud and statutory fraud claims. Viewed in the light most favorable to Residencial,
the evidence raised a fact issue as to whether Colonia, through its agent Eduardo, made a false
promise or representation during the negotiation of the settlement agreement that Residencial could
use one of the condominium units as an office and whether Residencial relied on the promise or
representation to its detriment when it renovated and used the unit as an office for a year.

 In order to defeat Colonia's no-evidence summary judgment as to its waiver defense,
Residencial was required to raise a fact issue as to whether Colonia voluntarily and intentionally
relinquished its right to enforce the restrictive covenant. Pebble Beach Property Owners' Ass'n, 2
S.W.3d at 290. In order to establish a waiver of a restrictive covenant, the waiver must be
established under one of two distinct rules of law:

 (a) homeowners have acquiesced to such substantial violations within the restricted
area as to amount to an abandonment of the covenant or a waiver of a right to enforce
it; or


 (b) there has been such a change in the conditions in the restricted area or areas
surrounding it that it is no longer possible to secure any substantial degree of the
benefits sought to be realized through the covenants.


Id. 

Among the factors to be considered when determining whether a waiver has occurred are the
number, nature, and severity of any then-existing violations, any prior acts of enforcement of the
restrictions, and whether it is still possible to realize to a substantial degree the benefits intended
through the covenant. Id. In order to raise a fact issue, Residencial was required to present some
evidence that the violations then existing were so extensive and material as to reasonably lead to the
conclusion that the restrictions had been abandoned. Id.

 In this case, although Residencial's evidence established two prior violations during the time
SRD owned the condominiums, the only "then-existing" violation was the violation by Residencial
in its use of one of the twelve condominium units as a business office. "Considering the number,
nature and severity of the existing violations, any prior acts of enforcement, and whether it is still
possible to realize to a substantial degree the benefits sought to be obtained by way of the covenants,
[Colonia] has not yet reached the point where it is no longer possible to still realize the benefit
sought to be obtained by the [restriction to residential use]." Id. at 291. Accordingly, the trial court
did not err in granting the no-evidence summary judgment on Residencial's waiver defense.

Conclusion


 The trial court erred in granting Colonia's motion for traditional summary judgment because
a genuine issue of material fact was presented on Residencial's affirmative defense of estoppel. In
addition, the trial court erred in granting Colonia's no-evidence motion for summary judgment as
to Residencial's claims for fraud and statutory fraud. The trial court properly granted summary
judgment as to all other claims and affirmative defenses asserted by Residencial.


 Alma L. López, Chief Justice
1. Cristina testified in her deposition that Begonia told her that Eduardo was going to take her place and that
"whatever he says is like if I had said it." This is sufficient to raise a fact issue as to whether Eduardo had apparent
authority to act on behalf of Begonia and Colonia. See NationsBank, N.A. v. Dilling, 922 S.W.2d 950, 952-53 (Tex.
1996) (noting apparent authority established by showing a principal either knowingly permitted an agent to hold itself
out as having authority or showed such lack of ordinary care as to clothe the agent with indicia of authority). 
Furthermore, Eduardo represented that he had directly spoken with Begonia about the office situation and stated that
Cristina could use one of the condominium units as an office for Residencial. Although Residencial appears to brief the
agency/alter ego/joint enterprise issue as a separate claim, the issue is not a separate claim but only a theory by which
Colonia can be held liable for the statements made by Eduardo.